IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIM. NO. JKB-15-539 |
| TERRY L. LANGFORD, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Now pending before the Court is Terry L. Langford's *pro se* Motion to Vacate sentence pursuant to 28 U.S.C. § 2255 (ECF No. 237). The motion is fully briefed, and no hearing is required. *See* 28 U.S.C. § 2255(b); Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Court will deny Langford's motion.

### I. *Background*

On October 13, 2015, Langford was indicted on charges of bank fraud and aggravated identity theft. (ECF No. 1.) On January 14, 2016, Attorney Michael D. Montemarano was appointed to represent Langford pursuant to the Criminal Justice Act. (ECF No. 25.) In September 2016, Langford requested the Court replace Montemarano with new counsel, citing "conflict and total breakdown in communication" (ECF No. 55), and moved to represent themselves[1] *pro se* (ECF No. 62). In response, the Court discharged Montemarano, but clarified that Montemarano would remain "standby counsel and custodian of discovery provided to Defendant," as well as

---

[1] The Court notes that Langford has used both "he/him" and "they/them" pronouns in previous filings, and currently adopts the pronouns that Langford uses to refer to themselves in their Motion to Vacate Sentence and Reply in support of that Motion. (ECF Nos. 237, 255.)

1

"Defendant's conduit for electronic filing of any document Defendant wishes to file." (ECF No. 66.)

On October 4, 2016, a grand jury issued a superseding indictment, charging Langford with five counts of bank fraud and five counts of aggravated identity theft. (ECF No. 69.) Langford pled not guilty to all ten counts on October 28, 2016, and on November 10, 2016, a jury found Langford guilty on all ten counts. (ECF No. 129.) Shortly thereafter, Langford filed a *pro se* motion for a new trial (ECF No. 134), which this Court considered and denied (ECF No. 143). On September 7, 2017, this Court sentenced Langford to a period of 121 months' imprisonment. (ECF No. 185.)

Langford appealed their convictions and sentence to the Fourth Circuit, which affirmed this Court's decision. *United States v. Langford*, 771 F. App'x. 521, 527 (4th Cir. 2019) (unpublished). The Fourth Circuit rejected Langford's arguments that their *Miranda* waiver was coerced, they were not sufficiently mentally competent to represent themselves *pro se*, the superseding indictment violated their constitutional rights, the evidence amassed at their trial was insufficient to convict them, the Court erred in imposing its sentence, and Langford was entitled to a new trial. *Id.* at 524–26. The Fourth Circuit denied Langford's petition for rehearing on June 24, 2019. (ECF No. 233.) On July 27, 2020, Langford filed the present *pro se* motion to vacate their conviction and sentence pursuant to § 2255. (ECF No. 237.)

## II.   *Legal Standards*

Title 28 U.S.C. § 2255 allows a federal prisoner to move to set aside a sentence on the grounds "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The

movant in a § 2255 proceeding bears the burden of proving her entitlement to relief by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Though a court must hold a hearing when the movant raises a genuine dispute of fact, the Court need not do so where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Nardone*, 948 F.2d 1283 (4th Cir. 1991) (Table) (citing *Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970)) ("The decision concerning whether to hold such a hearing is committed to the sound discretion of the district court.").

### *III. Analysis*

Langford argues that their sentence should be vacated under § 2255 due to both ineffective assistance of counsel by Montemarano and prosecutorial misconduct. (Mot. Vacate at 4, 10, 14, ECF No. 237.) For the reasons set forth below, all of Langford's claims under § 2255 fail.

#### *A. Ineffective Assistance of Counsel*

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, the Supreme Court articulated a two-part test for a defendant to demonstrate ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984); *see also United States v. Mitchell*, 1 F.3d 235, 240 (4th Cir. 1993).

As for the first prong, courts recognize "the difficulties inherent in evaluating counsel's performance" after the fact, and as a result, "courts 'must indulge a strong presumption that

3

counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008) (quoting *Strickland*, 446 U.S. at 689). Accordingly, "the standard for judging counsel's representation is a most deferential one." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Indeed, even if a court finds that counsel committed unreasonable errors, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citing *Strickland*, 446 U.S. at 687).

Langford argues that Montemarano provided ineffective assistance to Langford when he (1) "failed to discuss pretrial the criminal case with his client . . . resulting in the filing of inadequate and defective pretrial motions," (2) erroneously stated that Langford could not replace him as counsel when Langford could have properly done so, and (3) "failed to convey a second formal plea offer to his client or to inform his client that failure to accept the plea offer would result in a superceding [sic] indictment[.]" (Mot. Vacate at 4–10.) The Court considers each of Langford's arguments and finds that Langford did not meet their burden of demonstrating that any of Montemarano's errors deprived Langford of a fair trial.

### *1. Failure to Discuss Case with Langford*

Langford alleges first that Montemarano failed "to meet with his client the petitioner and discuss or investigate any aspect of the government's case or defense facts which resulted in his filing inadequate and defective pretrial motions causing prejudice to the petitioner." (Mot. Vacate at 4.) Langford faults Montemarano for allegedly not adhering to a consistent legal theory of the case and thereby losing the ability to make some potential defenses under the Fourth and Fifth Amendments. (*Id.* at 4–5.) Langford also describes Montemarano as "flying in the dark (just winging it)" during a suppression hearing. (ECF No. 255 at 5.) Langford provides various

examples of different tactical decisions they would have made if, at the time, they had been representing themselves. (Mot. Vacate at 6.)

Langford fails to demonstrate that Montemarano's alleged failure to discuss the case with Langford constituted an unreasonable error such that Langford was deprived of a fair trial under the two-part *Strickland* test. First, Langford does not present sufficient evidence to cause the Court to second-guess Montemarano's legal strategies in this case. *See Hyman v. Aiken*, 824 F.2d 1405, 1416 (4th Cir. 1987) (citing *Strickland*, 466 U.S. at 689) ("[C]ounsel enjoys the benefit of a strong presumption that the alleged errors were actually part of a sound trial strategy and that counsel's performance was within the limits of reasonable professional assistance."). Further, under the *Strickland* test's second prong, an unsubstantiated allegation that Montemarano caused "prejudice" to Langford during the pretrial proceedings does not suffice to show that the trial was unreliable or fundamentally unfair—especially because Langford represented themselves *pro se* at the time of trial. *See Lockhart*, 506 U.S. at 372. Thus, Langford does not sufficiently show ineffective assistance of counsel to rebut the strong presumption in favor of protecting counsel's strategic decisions and to justify setting aside their conviction under § 2255.

### 2. *Deterring Langford from Replacing Counsel*

Langford alleges that they filed a motion to replace Montemarano as trial counsel, and when the magistrate judge denied that motion, Montemarano refused to comply with Langford's request to appeal the magistrate judge's decision. (Mot. Vacate at 7.) The magistrate judge issued a marginal order denying Langford's motion to replace Montemarano on September 19, 2016. (ECF No. 57.) On September 30, 2016, this Court held a Motion Hearing and *granted* Langford's motion to represent themselves *pro se* and discharge counsel. (ECF Nos. 64, 66.)

Langford contends—without any evidence to support this claim—that Montemarano's refusal to appeal the magistrate judge's denial of the motion for new counsel was "prejudicial." (Mot. Vacate at 8.) It is difficult to see how Montemarano's decision not to file an appeal injected any unfairness or prejudice whatsoever into Langford's presentation of their case. Indeed, this Court granted Langford's motion to represent themselves *pro se* a mere eleven days after the magistrate judge's denial. Thus, Langford does not demonstrate ineffective assistance of counsel in this regard.

### 3. Failure to Communicate Plea Offer

Langford also claims that Montemarano did not convey to them a second plea offer, which allegedly contained more favorable terms than an earlier plea offer that Langford had rejected. (Mot. Vacate at 10–12.) Langford alleges that after defense counsel rejected the second plea offer, the government filed a superseding indictment adding more counts, and the case proceeded to trial. (*Id.*) According to Langford, "had pretrial counsel Montemarano conveyed this second formal plea offer to his client, they would have accepted it." (*Id.* at 12.)

Although Langford correctly notes that defense counsel's failure to communicate a plea offer to a defendant may amount to ineffective assistance of counsel, *see Missouri v. Frye*, 566 U.S. 134, 145 (2012), the Court need not reach this inquiry because the record reflects that Langford was in fact familiar with the plea offer in question. Langford explains that "[t]he specific plea offer the defendant is referring to is dated September 19, 2016" and "that plea is for a sentence of 48 months," as opposed to the 51- to 57-month sentence the earlier plea offer allegedly entailed. (ECF No. 255 at 18.) However, during a September 23, 2016 Motion Hearing, the parties did discuss the September 19, 2016 plea offer with the Court. (ECF No. 247-1.) During that hearing, Montemarano recounted that he had "extended conversations" with Langford regarding the

6

September 19, 2016 plea offer. (*Id.*) The Court explicitly asked Langford if they "want[ed] any more time to consider that plea offer," but Langford responded that they did not. (*Id.*) The Court then concluded that the September 19, 2016 plea offer has "been tendered and rejected and is no longer on the table." (*Id.*)

Because the record demonstrates Langford's previous awareness and rejection of the September 19, 2016 plea offer, there is no evidence of ineffective assistance of counsel on the basis of failing to convey a second plea offer to Langford.

### B. *Prosecutorial Misconduct*

Prosecutorial misconduct warrants vacating a sentence only when the defendant demonstrates both (1) that the prosecutor's conduct was improper and (2) that such misconduct "prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *Mitchell*, 1 F.3d at 241 (quoting *United States v. Brockington*, 849 F.2d 872, 875 (4th Cir. 1988)) (internal quotation marks omitted). To establish prejudice to a defendant's case under the second prong, courts consider numerous factors, including: "(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters." *Id.* (internal quotation marks omitted). Failure to raise claims of prosecutorial misconduct on direct appeal render such arguments procedurally defaulted. *See Jones v. United States*, Crim. No. DKC-14-176, 2018 WL 1069438, at*4 (D. Md. Feb. 27, 2018) (citing *Pruett v. Thompson*, 996 F.2d 1560, 1565 (4th Cir. 1993)).

7

Langford argues that their sentence should be vacated due to prosecutorial misconduct. Specifically, Langford contends that the government engaged in selective prosecution, destruction of material evidence, willful concealment of known material impeachment evidence, subornation of testimony known to be false and misleading, and provision of misleading indictment and discovery information to the Court. (Mot. Vacate at 14.) The Court finds that Langford fails to meet their burden of proving that these errors deprived Langford of a fair trial. *See Mitchell*, 1 F.3d at 240.

### 1. *Selective Prosecution*

Langford claims that Assistant United States Attorney Joyce McDonald made "false and mis-leading averments to this Court" when Langford was arrested in 2014, as well as when Langford moved for a new trial in 2018. (Mot. Vacate at 16–17.) Specifically, Langford alleges that McDonald claimed some of their legal purchases were actually instances of bank fraud. (*Id.*) Langford also implies that McDonald had a suspiciously strong interest in prosecuting them for the offenses at issue, and other attorneys allegedly expressed surprise at McDonald's "antipathy and anger" toward Langford. (*Id.* at 17.)

Although Langford previously argued before this Court that the government engaged in "vindictive prosecution" (ECF No. 52 at 3–7), Langford chose not to raise this issue on direct appeal. Moreover, Langford does not cite the alleged false statements made by McDonald and does not provide evidence showing that any of her statements were indeed false. As such, Langford fails to meet their burden of proving the claims underlying their § 2255 motion by a preponderance of the evidence. *See Miller*, 261 F.2d at 547. Similarly, Langford presents no evidence of improper motives on the part of McDonald. McDonald's decision to get personally

8

involved in prosecuting Langford appears to reflect not animosity, but rather the government's decision to assign a prosecutor who is familiar with Langford, a repeat offender, to this case.

### 2. *Destruction of Material Evidence*

Langford also claims the government acted improperly by disclosing only fifteen minutes of a roughly one-and-a-half-hour surveillance tape depicting Langford's arrest. (ECF No. 255 at 22.) Had the government released the rest of the footage, it would have included "illegal police conduct," Langford claims. (Mot. Vacate at 19.)

Although Langford already raised this argument in the context of their October 16, 2016 *pro se* motion for a *Franks* hearing under the Fourth Amendment (ECF No. 78 at 2) and during the pretrial conference (*see* ECF No. 247-4), they chose not to raise it on direct appeal. *See Jones*, 2018 WL 1069438, at *4. Moreover, in their § 2255 motion, Langford does not explain what was "illegal" about their arrest, let alone provide any evidence that such illegal conduct occurred. Consequently, Langford does not meet their burden of proving by a preponderance of the evidence that this alleged improper arrest substantially affected their rights such that they were deprived of a fair trial. *See Miller*, 261 F.2d at 547.

### 3. *Willful Withholding of Known Material Impeachment Evidence*

Langford next argues that federal prosecutors McDonald and Assistant United States Attorney Zachary Myers knew that key prosecution witness "John Doe," now known to be Cheyenne Davis, was arrested and convicted of assault around the time of Langford's trial, but these prosecutors did not inform Langford of Davis's offense. (Mot. Vacate at 20.)

Langford already made this claim in their motion for a new trial (*see* ECF No. 203) and on appeal, but both this Court and the Fourth Circuit determined that it lacked merit. The Fourth Circuit rejected Langford's claim that "at the time of trial, a witness was under investigation for

9

fraud offenses" because "the newly discovered evidence was merely impeaching, was not material, and would not have resulted in an acquittal." *Langford*, 771 F. App'x. at 526–27. After all, even if a court completely disregarded Doe's testimony, there was still "overwhelming evidence of Langford's guilt." *Id.* at 527.

This Court agrees with the Fourth Circuit's conclusion that Langford was not sufficiently prejudiced by the government's failure to inform Langford of Davis's offenses such that they were deprived of a fair trial.

### 4. *Suborning Testimony Known to be False and Misleading*

Langford contends that, during the prosecution of this case, the government suborned false testimony from three witnesses. (Mot. Vacate at 23–24.) Witnesses Detective Kimberly Lankford and John Doe allegedly falsely testified that Langford "was involved in fraudulent credit card purchases that was [sic] being declined on November 17, 2014," and Detective Eric Heyman allegedly falsely testified that Langford "had confessed to him their involvement and participation in the indicted offenses." (*Id.*)

Although Langford previously argued before this Court that Detectives Lankford and Heyman made "several deliberately false and reckless statements with a disregard for the truth" (ECF No. 78 at 1), Langford chose not to contest any of these alleged false statements on direct appeal. Problematically, Langford provides no evidence to support the falsity of these witnesses' testimony—and certainly provides no evidence illustrating that these alleged instances of false testimony had a prejudicial effect, thereby depriving Langford of a fair trial. Accordingly, Langford fails to meet their burden of proof under § 2255. *See Miller*, 261 F.2d at 547.

10

### *5. Providing Misleading Indictment and Discovery Information to Court*

Finally, Langford contends that after denying Langford's motion to dismiss the superseding indictment (ECF No. 76), the Court directed the government to provide discovery materials to Langford (Mot. Vacate at 25). Langford alleges that "during the recent attorney file search" conducted by Montemarano, Langford "discovered a letter that was not previously provided to them by government counsel." (*Id.*) In this letter, dated November 11, 2016, Myers allegedly wrote that the government could not meet its obligation to share discovery material with Langford. (*Id.*)

The letter in question was filed with the Court on November 11, 2016, so it has been publicly available for more than four years. (*See* ECF No. 131.) The fact that neither Montemarano nor Langford may have read that filing until 2020 does not demonstrate any improper conduct on the part of the government. If Langford wished to object to the substance of the November 11, 2016 letter, they could have done so before this Court or on appeal. Even if the government had failed to make its letter publicly available, Langford has not identified any prejudice caused by the letter that would indicate that Langford was deprived of a fair trial. Thus, the Court has no cause to vacate Langford's sentence on this ground.

### *IV. Conclusion*

For the foregoing reasons, an order shall enter denying Langford's motion. Because Langford has not "made a substantial showing of the denial of a constitutional right," the Court will not issue a certificate of appealability. 28 U.S.C. § 2253(c)(2).

11

DATED this _15_ day of January, 2021.

BY THE COURT:

/s/ James K. Bredar

James K. Bredar
Chief Judge