IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| | * | CRIMINAL NO. JKB-15-0539 |
| TERRY LANGFORD, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Terry Langford[1] was found guilty at trial of several counts of bank fraud and aggravated identity theft and, on September 7, 2017, was sentenced to 120 months' imprisonment. (ECF No. 185.) Langford previously filed a motion for compassionate release based on the COVID-19 pandemic and the fact that she suffers from a number of health conditions, (ECF No. 240), which this Court denied. (ECF No. 251.) Presently before the Court is another Motion for Compassionate Release in which she bases her request for release on the pandemic and a recent potential cancer diagnosis. (ECF Nos. 266, 270).[2] The Court will deny Langford's Motion.

Motions for compassionate release are governed by 18 U.S.C. § 3582(c)(1)(A). Under this section, a district court may modify a convicted defendant's sentence when "extraordinary and compelling reasons warrant such a reduction" and the court has "consider[ed] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). A defendant may only move for compassionate release under § 3582(c)(1)(A) after he or she "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

---

[1] The Court understands that Langford identifies as female. (*See* ECF No. 266-1 at 8; ECF No. 275-1 at 177.) The Court therefore uses she/her pronouns throughout this Memorandum.

[2] Alternatively, Langford styles the Motion as one for reconsideration of her previously-denied motion for compassionate release. Construing her Motion as one for reconsideration would not change the Court's decision.

1

on the defendant's behalf or [after] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Prior to filing her previous motion for compassionate release, Langford filed a request with the warden of her institution, which was not answered. (*See* ECF No. 251 at 2.) She also filed more recent requests, which were filed over 30 days ago and which do not appear to have been answered. (ECF No. 266 at 4; ECF No. 266-1 at 5–6.) The Government argues that "for a new compassionate release claim based on COVID, the Defendant has failed to exhaust administrative remedies by not addressing the new COVID risk factors with the BOP." (ECF No. 275 at 3.) The basis for this argument is not clear, as Langford's requests plainly indicate that she believes she is "at heightened risk for infection or severe illness, according to the CDC" given her preliminary cancer diagnosis. (ECF No. 266-1 at 5–6.) The Court therefore concludes that Langford has satisfied the administrative exhaustion requirements imposed by § 3582(c)(1)(A) and will consider whether she has presented extraordinary and compelling reasons for her release and the § 3553(a) factors warrant her release.

## I.   *Extraordinary and Compelling Reasons*

Under 28 U.S.C. § 994(t), the United States Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." The Commission has stated that "extraordinary and compelling reasons" exist where: (1) a defendant has a terminal or serious medical condition; (2) a defendant with deteriorating health is at least 65 years old and has served ten years or 75% of his term of imprisonment; (3) certain family circumstances arise in which a defendant must serve as a caregiver for minor children or a partner; or (4) the Bureau of Prisons ("BOP") determines other circumstances create "extraordinary and compelling reasons" for sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)–(D).

This mandate and policy statement, however, predate the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), which "remove[d] the Bureau of Prisons from its former role as a gatekeeper over compassionate release motions." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020) (internal quotation marks and citation omitted). Accordingly, the Fourth Circuit has affirmed that "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (emphasis in original) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). In implementing this mandate, this Court has held that "medical conditions which make a defendant uniquely susceptible to complications from COVID-19 create 'extraordinary and compelling reasons' to grant compassionate release pursuant to § 3582(c)(1)(A)." *United States v. Richardson*, Crim. No. JKB-09-0288, 2020 WL 3267989, at *2 (D. Md. June 17, 2020); *see also United States v. Lewin*, Crim. No. SAG-15-0198, 2020 WL 3469516, at *3 (D. Md. June 25, 2020) (A defendant can establish his entitlement to compassionate release by demonstrating that he "(1) has a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-19, and (2) is more likely to contract COVID-19 in his particular institution than if released.").

Despite this, the totality of the circumstances do not establish extraordinary and compelling reasons for Langford's release. The Court acknowledges that Langford alleges that she has medical conditions that may increase her risk of severe illness should she re-contract COVID-19: potential cancer, hypertension, and obesity. (ECF No. 266 at 2–3, 6); *see also COVID-19: People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html ("Having cancer can make you more likely to get very sick from COVID-19"; "[h]aving heart conditions [including] possibly high blood pressure (hypertension) can make you more likely to get very sick from COVID-19"; "obesity . .

3

. or severe obesity . . . can make you more likely to get very sick from COVID-19."). These conditions potentially favor a finding of extraordinary and compelling reasons for release, particularly given that Langford alleges that she previously contracted COVID-19 and became quite ill. (ECF No. 266 at 4–5.)

The Court concludes, however, that Langford's failure to substantiate her likely cancer diagnosis precludes a finding of extraordinary and compelling reasons on the basis of her medical conditions. Although Langford has alleged that she has cancer and her medical records indicate that doctors suspect that cancer is incredibly likely, (*see* ECF No. 275-1 at 7 (medical record indicating that there is "an almost 90% likelihood for a urothelial cancer")), Langford has refused a cystoscopy, the procedure which would provide confirmation of this very concerning condition. (*See, e.g.,* ECF No. 266-1 at 1–3 (reflecting March 2021 CT scan, which recommended a cystoscopy that Langford refused, and August 2021 consultation with medical staff during which Langford refused the cystoscopy despite being warned of the risks of doing so and of the likelihood of cancer); ECF No. 275-1 at 44–45 (indicating that Langford was set up for a in March 2021 cystoscopy but that she refused); *id.* at 7 (reflecting August 2021 consultation where Langford "refused to commit to the cystoscopy"); *id.* at 1 (reflecting September 2021 consultation with medical staff where Langford refused to have cystoscopy performed locally).) While the Court does not diminish the seriousness of a potential cancer diagnosis, Langford's refusal of further diagnostic procedures leaves significant uncertainty as to whether her medical conditions qualify as an extraordinary and compelling reason warranting compassionate release.

While at an earlier point in the pandemic, the Court may have concluded this uncertainty was insufficient to preclude a finding of extraordinary and compelling reasons, the widespread availability of vaccines against COVID-19 ultimately tips the balance against such a finding in

Langford's case.[3] *See United States v. Sanders*, Crim. No. SAG-06-087, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021) ("This Court agrees with the vast majority of other courts who have ruled, on the basis of present understanding, that the highly effective available vaccines dramatically affect whether an inmate's medical conditions constitute the 'extraordinary and compelling reason' required to further consider compassionate release."); *United States v. Collins*, Crim. No. EKD-17-0033, 2021 WL 4991588, at *3 (W.D. Va. Oct. 27, 2021) ("For the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release.") (citations omitted). Accordingly, the absence of extraordinary and compelling reasons requires the denial of Langford's Motion.[4]

## II.   *Section 3553(a) Factors*

Further, even assuming that Langford presented extraordinary and compelling reasons for compassionate release, the Court finds, as it did in denying Langford's prior request for compassionate release, that the 18 U.S.C. § 3553(a) factors continue to weigh against granting her Motion. Section 3553(a) provides that courts shall consider a variety of factors when imposing a sentence, including: "(1) [Defendant's] personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence;

---

[3] Langford is vaccinated against COVID-19. (ECF No. 275-1 at 89.)

[4] Langford also alleges that her facility is providing her with no physical or mental health care. (*See* ECF No. 277 at 2.) The Court notes that this does not appear to be the case, as Langford's briefing and medical records seem to reflect that Langford is receiving medical care, and any limitations on this care appear to be based on Langford's declination of certain medical care, as described above. Nevertheless, this is a serious allegation. However, "[c]laims that prison officials failed to provide adequate medical care to an inmate . . . sound in the Eighth Amendment." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted). While Langford could seek relief for this alleged constitutional violation in an appropriate lawsuit, "[a] motion for compassionate release is not the proper vehicle for an Eighth Amendment claim, and the Eighth Amendment protections and standards are not applicable to the compassionate release analysis under Section 3582(c)." *United States v. Wiley*, Crim. No. FDW-03-0205, 2021 WL 1234595, at *1 n.1 (W.D.N.C. April 1, 2021) (internal quotations and citation omitted).

5

and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants." *See also United States v. Bryant*, Crim. No. CCB-95-0202, 2020 WL 2085471, at *4 (D. Md. Apr. 30, 2020).

Langford's criminal history reflects a troubling pattern of committing the same type of offense. (*See* ECF No. 256 at 5.) The Court has emphasized this both at sentencing and in its prior denial of Langford's request for compassionate release, citing Langford's "extreme" prior record, and explaining that the Court's responsibility to protect the public from future frauds and identity thefts was the most significant factor underlying Langford's sentence. (*Id.*) The Court continues to have serious concerns about Langford's risk of recidivism upon release, given her tendency to engage in financial frauds.[5]

### III. Conclusion

For the foregoing reasons, it is hereby ORDERED that Langford's Motion for Compassionate Release (ECF Nos. 266, 270) is DENIED.

DATED this 6 day of May, 2022.

BY THE COURT:

*/s/ James K. Bredar*
James K. Bredar
Chief Judge

---

[5] The Government also argues that Langford's refusal to consent to a cystoscopy may "suggest[] some sort of gamesmanship by the Defendant," which militates against her release. (ECF No. 275 at 16.) The Court does not base its conclusion on this argument, and the Court will not guess at the reasons for which Langford is choosing to decline certain medical care.